IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL ARQUERO,<br><br>    Plaintiff,<br><br>    v.<br><br>P.O. YOLANDA COLLIER #19806,<br>P.O. SHARMAUN FREEMAN #11568,<br>and the CITY OF CHICAGO,<br><br>    Defendants. | No. 18-cv-06017<br><br>Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

    This case involves allegations that two police officers used excessive force in responding to an in-progress shooting on yet another night of deadly violence in Chicago. Plaintiff Michael Arquero was standing with a group of individuals on the sidewalk outside a restaurant when two offenders in a passing car fired several rounds at the crowd. Plaintiff responded by running into the street with his own pistol and firing multiple rounds at the departing automobile that carried the offenders. Plaintiff's aim was deadly: at least one his shots struck the driver in the head and killed him.

    Alerted by the unmistakable sound of gunfire, Chicago Police Officers (and Defendants) Yolanda Collier and Sharmaun Freeman, who were parked a block away from the scene, immediately responded in their unmarked squad car. Within seconds

of their arrival, Defendants had shot and wounded Plaintiff. They soon took Plaintiff into custody.

Once he recovered from his wounds, Plaintiff brought this action under 42 U.S.C. § 1983 against Defendants and their employer, the City of Chicago. Plaintiff alleges that Defendants' conduct violated his rights under the Fourth Amendment to the Constitution. Defendants now seek summary judgment on qualified immunity grounds.

As explained below, a videorecording of the relevant incident is fortuitously part of the record of this case. Having reviewed the video numerous times, the Court finds that it establishes beyond reasonable question that the Defendants' use of force was justified under applicable qualified immunity precedent. Accordingly, Defendants are entitled to summary judgment.

I. BACKGROUND

On the night of September 9, 2016, Plaintiff Michael Arquero stood in a small crowd outside a taco restaurant in the West Town neighborhood of Chicago. (Dkt. 122 ¶¶ 1, 6.) At approximately 11:30 p.m., a gray Honda stopped in front of the restaurant, and at least one of the car's two occupants started shooting into the crowd. (*Id.* ¶¶ 8–11.) Plaintiff pulled out his own weapon (he had a Glock model 19 pistol loaded with 16 rounds of 9 mm ammunition plus three full 15-round magazines) and returned fire. (*Id.* ¶ 12; Dkt. 112-2 at 108:13-110:10.) As the Honda drove away, Plaintiff followed it on foot, maneuvered into the street, and continued firing; when the car crashed, Plaintiff reloaded and resumed firing. (*Id.* ¶¶ 13–17.) Only when the

car's passenger climbed out of the window and ran did Plaintiff stop shooting. (*Id.* ¶¶ 18–21.) Plaintiff had shot and killed the car's driver.[1] (*Id.* ¶ 58.)

At the same time as the incident, Defendants Yolanda Collier and Sharmaun Freeman, both Chicago Police Officers, sat nearby in an unmarked white police car dressed in civilian clothes but wearing police vests and stars. (*Id.* ¶¶ 22, 24.) Each testified that, responding to the sound of gunfire, they saw Plaintiff in the street firing his weapon into what appeared to be a parked car. (*Id.* ¶ 25.) At that point, Defendants drove toward Plaintiff and stopped their vehicle approximately ten to fifteen feet behind him. (*Id.* ¶ 31.) As the police car stopped, Plaintiff stopped shooting, lowered his shooting arm, and turned away from his target in the general direction of both Defendants and the taco shop. (*Id.* ¶ 35.) By the time the next three seconds had passed, Plaintiff had run past Defendants; Defendants had each fired four to six shots; and Plaintiff had been struck with three bullets. (*Id.* ¶¶ 44, 51, 57.) This case turns on what happened during that critical period of three seconds.

As fate would have it, Plaintiff's fusillade, and the response of Defendants Freeman and Collier, was caught on video. (*See* Dkt. 112-6.) That video shows Plaintiff shooting into the car, the arrival of the police vehicle, and Plaintiff's flight. (*Id.*) Some of the action on the video is obscured by a parked car, and there is no associated audio. (*Id.*)

---

[1] Plaintiff asserts, and Defendants do not dispute, that state prosecutors did not bring homicide charges against him for this killing. (Dkt. 129 ¶ 29.) Plaintiff admits that he later pleaded guilty to unlawful use of a weapon by a felon in connection with this incident. (Dkt. 122 ¶ 65.)

3

Plaintiff sued Defendants Freeman and Collier and the City of Chicago under 42 U.S.C. § 1983, alleging that Defendants' actions amounted to excessive force in violation of Plaintiff's Constitutional rights. (Dkt. 1 at 1–4.) Defendants move for summary judgment on qualified immunity grounds. (Dkt. 117 at 2.) The parties dispute the exact quality and quantity of the verbal commands Defendants directed at Plaintiff. (*Compare id.* at 4 *with* Dkt. 123 at 14.) The parties also dispute whether Plaintiff dropped his gun, bent over, or raised his hands above his head before Defendants fired at him. (*Compare* Dkt. 117 at 4 *with* Dkt. 123 at 3.) Plaintiff argues that the disagreement about what happened during those three seconds constitutes a genuine issue of material fact precluding a finding of qualified immunity at this stage. (Dkt. 123 at 6.) Defendants disagree. (Dkt. 117 at 8.)

## II.  LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322−23 (1986).

Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

4

party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted).

All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Id.* at 380 (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). When the record includes a video recording, courts should not rely on the nonmoving party's version of events if that version is "so utterly discredited by the record that no reasonable jury could have believed [it]." *Id.* This is because "[w]hen video footage firmly settles a factual issue, there is no genuine dispute about it . . . ." *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018). But "a video that is ambiguous or 'not wholly clear' can [still] be relied on only for those facts that can be established 'with confidence' and 'beyond reasonable question.' " *Smith v. Finkley*, 10 F.4th 725, 730 (7th Cir. 2021) (quoting *Johnson v. Rogers*, 944 F.3d 966, 967, 969 (7th Cir. 2019)).

### B.     Qualified Immunity

Defendants seek the shield of qualified immunity. (Dkt. 117 at 11.) Qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation," which include "liability for money damages[,] . . . 'distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.'" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982)). In effect, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

When a defendant raises the defense of qualified immunity, "the plaintiff bears the burden of defeating it by showing that (1) the defendants violated a constitutional right and (2) the constitutional right was clearly established at the time of the violation." *Garcia v. Posewitz*, 79 F.4th 874, 879 (7th Cir. 2023); *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). Plaintiff cannot meet that burden.

### III.   DISCUSSION

### A.     Determining Qualified Immunity at Summary Judgment

Plaintiff first argues that the propriety of qualified immunity cannot be established at this stage of the case because that analysis relies on disputed material facts. (Dkt. 123 at 6) (citing *Weinmann v. McClone*, 787 F.3d 444, 451 (7th Cir. 2015)). Plaintiff contends that two material facts remain in dispute: (1) whether Plaintiff was still holding the gun when Defendants shot him; and (2) whether Defendants provided sufficient warnings before shooting him. (Dkt 123 at 13–14.) Plaintiff argues

6

that the qualified immunity determination turns on the resolution of those facts (*id.* at 6), but the Court disagrees. Those facts are not material to the determination of whether qualified immunity applies because Defendants' actions were reasonable and Plaintiff cannot establish that Defendants violated any clearly established right.

### B. Defendants did not Violate Plaintiff's Constitutional Rights

In the qualified immunity context, the propriety of a police shooting is governed by the Fourth Amendment: an unreasonable shooting is an unconstitutional seizure. *Horton*, 883 F.3d at 948–49 ("A police officer's use of deadly force on a suspect is a seizure within the meaning of the Fourth Amendment, so the force must be reasonable to be constitutional."). Determining whether the force was reasonable under the Fourth Amendment is an objective test: "[a] plaintiff must show the officer's use of force was objectively excessive from the perspective of a reasonable officer on the scene." *Id.* at 949. This test requires that "the Court consider[] only the facts that were knowable to the defendant officers," *White v. Pauly*, 580 U.S. 73, 77 (2017), taking into account the totality of the circumstances on the scene.

Any post-hoc assessment of an officer's conduct cannot ignore the real-world circumstances present during the relevant incident. This inquiry into the reasonableness of an officer's actions must account for "the pressures of time and duress, and the need to make split-second decisions under intense, dangerous, uncertain, and rapidly changing circumstances." *Horton*, 883 F.3d at 950. Courts must be wary of "hindsight's distorting lens" and not discount the extreme stress of the moment. *Id.* Put another way, this Court must account for the very real effect

7

staring down the business end of a Glock pistol has on an officer's situational acumen.[2]

A police officer may reasonably use deadly force against an individual who constitutes a threat to the officer or others. *See id* at 949–50. An officer's shooting is also reasonable, in certain circumstances, to prevent escape. *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985). Specifically, officers may use deadly force to prevent escape when there "is probable cause to believe that [the suspect] has committed a crime involving the infliction or threatened infliction of serious physical harm," and "where feasible, some warning has been given." *Id.*

To determine reasonableness, courts must address the factors outlined in *Graham v. Connor*, 490 U.S. 386 (1989). *Smith*, 10 F.4th at 736. Those factors are: "the severity of the crime at issue, the immediate threat the suspect posed to the safety of the police officers and others, and if the suspect actively resisted or attempted to evade arrest by flight." *Id.* (citing *Graham*, 490 U.S. at 396).

In essence, the issue here is whether an objectively reasonable officer in Defendants' position, given what Defendants Freeman and Collier knew at the time, would reasonably have considered Plaintiff to be a sufficiently serious threat at the time that deadly force was used. Illinois law defines deadly force to include "[t]he

---

[2] In making an excessive force inquiry, courts ought not "view the matter as judges from the comfort and safety of our chambers, fearful of nothing more threatening than the occasional paper cut as we read a cold record accounting of what turned out to be the facts. We must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal." *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1333–34 (11th Cir. 2004).

8

firing of a firearm in the direction of the person to be arrested, even though no intent exists to kill or inflict great bodily harm." 720 Ill. Comp. Stat. 5/7-8. An officer is justified in using deadly force when making an arrest in two circumstances. First, an officer may use force when, based on the totality of the circumstances, it is "necessary to prevent death or great bodily harm to himself or [another]." 720 Ill. Comp. Stat. 5/7-5. Second, an officer may use deadly force when:

> (1) Such force is necessary to prevent the arrest from being defeated by resistance or escape and the officer reasonably believes that the person to be arrested is likely to cause great bodily harm to another; and
>
> (2) The person to be arrested committed or attempted a forcible felony which involves the infliction or threatened infliction of great bodily harm or is attempting to escape by use of a deadly weapon, or otherwise indicates that he will endanger human life or inflict great bodily harm unless arrested without delay.

720 Ill. Comp. Stat. 5/7-5. As explained below, Defendants' decision is supported by two independent rationales: self-defense and preventing escape. Either theory, standing alone, renders Defendants' actions reasonable and leaves behind no "genuine issue of material fact." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (noting that a genuine issue of material fact requires "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").

> 1. *Defendants' actions were reasonable because of the threat posed by Plaintiff.*

Plaintiff argues that, because Plaintiff did not pose a threat to them or others, Defendants' actions were unreasonable. (Dkt. 123 at 7–8.) Plaintiff describes his actions immediately before Defendants shot him: "[t]he Defendants . . . screamed for

9

the Plaintiff to drop his weapon. The Plaintiff tossed down his weapon sliding it away from him. The Plaintiff raised his hands above his head. The Defendants, . . . from within their vehicle, pulled out their weapon [*sic*] and shot the Plaintiff several times." (Dkt. 1 ¶¶ 16–19.) Plaintiff's response to Defendants' motion for summary judgment describes the critical interaction as follows: "[Plaintiff] heard someone yell, 'Cops!' and started to turn in response to the voice. Upon turning, [Plaintiff] observed a vehicle, unmarked, with its passenger pointing a gun at him. In that same moment, [Plaintiff] processed that they were law enforcement and started bending over to place the gun on the ground. After he placed the gun on the street, and as he was standing back up, Defendants shot him." (Dkt. 123 at 3) (internal citations omitted.) In short, Plaintiff argues that, in the moments immediately before being shot, Plaintiff clearly posed no threat to Defendants or anybody else. (*Id.* at 78.)

Plaintiff's version of events, however, is "utterly discredited" by a video in the record. *Scott*, 550 U.S. at 380. In the video, Plaintiff walks down the middle of a street—a street where pedestrians are walking and people sit in parked cars—and fires numerous rounds at and into an occupied car. (*See* Dkt. 112-6 at 2:52–3:16.) As the video shows, Defendants' vehicle rapidly approached Plaintiff and stopped close behind him. (*Id.* at 3:11–3:17.) Plaintiff then lowered his shooting arm and turned around to face the general direction of Defendants' vehicle and the busy restaurant where the shooting began. (*Id.* at 3:16–18.) After taking a few steps in that direction, Plaintiff ducked down slightly (without stopping his forward motion); he then began

10

to run past Defendants and in the general direction of the taco restaurant. (*Id.* at 3:16–28.)

Some of Plaintiff's body at this point in the video is obscured by a parked car and the unmarked police unit. But Plaintiff's head remains visible throughout the video, and at no point are Plaintiff's hands raised at, near, or above his head. (*Id.* at 317–21.) This refutes Plaintiff's contention that his hands were above his head in a sign of surrender. (*See* Dkt. 1 at 3.) Although it is unclear, when, if ever, Plaintiff dropped the gun, the point is immaterial: at a minimum, Plaintiff was advancing on Defendants without stopping or indicating surrender. Of critical relevance is that these events occurred fewer than three seconds after Plaintiff fired multiple shots into an occupied vehicle. In addition, and as both sides agree, Defendants commanded Plaintiff to drop his weapon before they opened fire. (Dkt. 1 at 3; Dkt. 117 at 4.) Plaintiff did not verbally indicate surrender, raise his hands above his head, or stop his forward motion. Under these circumstances, any reasonable officer would have considered Plaintiff to be a mortal threat to himself or others. *See* 720 Ill. Comp. Stat. 5/7-5.

    2. *Defendants' actions were reasonable because Plaintiff was escaping at the time he was shot.*

Another factor in determining the reasonableness of an officer's actions is whether the suspect "actively resisted or attempted to evade arrest by flight." *Smith*, 10 F.4th at 736 (citing *Graham*, 490 U.S. at 396). From the time Plaintiff turned in the direction of Defendants and the taco shop to the time he ran out of the video frame (about a 12-second period), Plaintiff never stopped moving in the opposite direction

of the shooting scene. Plaintiff also never stopped moving while off-camera and never raised his hands to indicate surrender. (Dkt. 112-6 at 3:16–28.) Under the circumstances, a reasonable officer could conclude that Plaintiff was fleeing.

When a suspect is fleeing, officers may reasonably use deadly force to prevent escape when there "is probable cause to believe that [the suspect] has committed a crime involving the infliction or threatened infliction of serious physical harm," and "where feasible, some warning has been given." *Garner*, 471 U.S. at 11–12. Defendants had just witnessed Plaintiff fire multiple rounds into an occupied vehicle. That easily satisfies *Garner*'s probable cause standard. As for warnings, Plaintiff concedes in his complaint that Defendants "screamed for Plaintiff to drop his weapon" before discharging their service weapons. (Dkt. 1 ¶¶ 16, 19.) This equates to "some warning" under *Garner*, particularly given the close proximity of Plaintiff to the police vehicle while he was still actively shooting. (*See* Dkt. 112-6 at 3:11–3:17.)

Defendants' actions were also authorized by Illinois law, which permits the use of deadly force to prevent escape when "[1] the officer reasonably believes that the person to be arrested is likely to cause great bodily harm to another; and [2] [t]he person to be arrested committed or attempted a forcible felony which involves the infliction or threatened infliction of great bodily harm . . . ." 720 Ill. Comp. Stat. 5/7-5. Defendants reasonably believed that Plaintiff, whom they had just seen repeatedly fire on an occupied vehicle, was likely to cause bodily harm to others and that he had committed a forcible felony involving the infliction of great bodily harm. Indeed, by

12

Plaintiff's own admission, his actions that night resulted in the death of the driver and injury to the passenger. (*See* Dkt. 1 at ¶¶ 12–13.)

        3.    *There are no genuine issues of material fact.*

Defendants' decision to fire at Plaintiff was reasonable based on both the rationales of self-defense and preventing escape. And as explained above, the video of the incident "utterly discredits" Plaintiff's claims that he had surrendered to Defendants and had his hands in the air when he was shot. See *Scott*, 550 U.S. at 380. Although Plaintiff contends that there are genuine issues of material fact as to whether he was holding the gun when he was shot (Dkt. 123 at 13–14) and whether Defendants gave him sufficient warnings before employing deadly force, these arguments fail.

To be sure, the video does not show whether Plaintiff was still holding the Glock when Defendants fired at him—but that issue is not material. (*See* Dkt. 123 at 13.) Fewer than three seconds elapsed between when Plaintiff turned toward Defendants and when he purportedly dropped the gun. (Dkt. 112-6 at 3:17–20.) Even if Plaintiff did drop the gun at that point, he certainly did not, as he contends (Dkt. 123 at 3), bend over to place the gun on the ground and then start to stand back up; the video depicts that, at most, Plaintiff barely ducked his head. (Dkt. 112-6 at 3:18–19.) Assuming Plaintiff dropped the gun, he would have done so while actively advancing on Defendants and without making clear what he was doing or that he was surrendering. A reasonable officer under these circumstances—where an individual had just committed a shooting and was continuing to move toward the officer—could

13

have concluded that Plaintiff still had a weapon on his person and posed a serious threat justifying the use of deadly force. *See Ford v. Childers*, 855 F.2d 1271, 1275 (7th Cir. 1988). Accordingly, because whether Plaintiff in fact dropped the Glock is not a fact "that might affect the outcome of the suit under the applicable substantive law," it is not material. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 842 (7th Cir. 2004) (cleaned up).

Plaintiff also argues that the question whether Defendants provided sufficient warnings before using deadly force constitutes a genuine dispute as to a material fact. (Dkt 123 at 14.) Plaintiff contends that Defendants should have explicitly warned him that they would use deadly force if he did not comply. (Dkt. 122 at ¶ 28.) But the video establishes that Defendants had only about three seconds to issue warnings, yet still, per Plaintiff's admission (Dkt. 1 at 3), managed to identify themselves as police and order Plaintiff to put down the Glock. (*See* Dkt. 122 at 9.) Plaintiff heard those warnings but continued to advance. Under these circumstances, it was not practicable for Defendants to issue the additional warning that they would use deadly force if Plaintiff did not comply. See *Gonzalez v. City of Anaheim*, 747 F.3d 789, 794 (9th Cir. 2014). This matter too thus does not constitute a genuine issue of material fact. *See Lawrence*, 391 F.3d at 842.

Defendants acted reasonably in employing deadly force against Plaintiff, both in self-defense and to prevent his escape. At no point did Defendants violate Plaintiff's rights by using excessive force. Moreover, there is no genuine dispute as to any fact material to this analysis. Under these circumstances, therefore, Defendants are

14

entitled to "judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)).

### C. Even Assuming Defendants Violated a Constitutional Right, that Right was not Clearly Established

Turning to the second inquiry under the qualified immunity umbrella, Plaintiff separately fails to show that any constitutional right Defendants violated was clearly established by law at the time of this incident. For the law to be clearly established, the "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Up first in this analysis is defining the right in question. Defendants argue that the right should be framed thus: whether a police officer is justified in using deadly force when he or she observes a suspect shooting in a public area, and the suspect "ignores commands to drop the weapon and instead closes the distance . . . with gun in hand then attempts to escape." (Dkt. 117 at 23.) Plaintiff frames the right as whether "it was unreasonable for Defendants to use deadly force on [Plaintiff] when he was not posing an imminent threat in the moments leading up to, and during, Defendants firing their guns." (Dkt. 123 at 7.)

Seventh Circuit precedent explains that "shooting an unarmed and surrendering suspect who was not actively resisting in the moments before shooting and who posed a diminishing threat would violate clearly established law." *Smith*, 10 F. 4th at 742–43 (citing *Weinmann*, 787 F.3d at 448); *Marion v. City of Corydon*, 559 F.3d 700, 705 (7th Cir. 2009); *Muhammed v. City of Chicago*, 316 F.3d 680, 683 (7th Cir. 2002)). That did not happen here. Far from posing "a diminishing threat,"

15

Plaintiff presented an active and ongoing threat by rapidly advancing on Defendants, despite their warnings, and never communicating an intent to surrender. *Id.*; (Dkt. 112-6 at 3:15–28). Plaintiff asserts that he posed no imminent threat, but few things could be more imminently threatening than a suspect firing multiple rounds, turning around, and rapidly advancing on Defendants with a just-used gun in hand. To maintain that Plaintiff suddenly transformed from an imminent threat (when he was actively shooting) to a non-imminent threat in a three-second span, when each of those seconds was spent advancing on Defendants, defies a commonsense application of reason and ignores the lodestar of any qualified immunity analysis: the perspective of a reasonable officer on the scene, not the distorting lens of hindsight. *Horton*, 883 F.3d at 950. Plaintiff's actions hardly suggested he was prepared to surrender—dropped gun or not—and Defendants thus did not violate clearly established law by using deadly force to counter the apparent imminent threat Plaintiff posed to Defendants and others.

### D. Indemnification Claim

Plaintiff also brings a claim for indemnification against the City of Chicago. (Dkt. 1 at 4.) A public entity like the City of Chicago "is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 Ill. Comp. Stat. 10/2-109. Because the Defendant officers are entitled to summary judgment on Plaintiff's excessive force claim, the City of Chicago is entitled to summary judgment on Plaintiff's indemnification claim.

## IV. CONCLUSION

Defendant's motion for summary judgment is granted.

SO ORDERED in case 18-cv-06017.

Date: March 27, 2025

JOHN F. KNESS
United States District Judge

17